IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:06CV206-03-MU

MALCOLM Y. AZARIAH, )
)
    Plaintiff, )
)
v. ) **O R D E R**
)
CHARLES McCURRY )
)
    Defendant. )
_____ )

    **THIS MATTER** comes before the Court on initial review of Plaintiff's pro se Complaint under 42 U.S.C. § 1983, filed July 5, 2006. (Document No. 1.)

    Plaintiff, a prisoner at Mountain View Correctional Facility, alleges in his 261 page Complaint against 29 defendants, all employed by the Department of Corrections, a variety of allegations including but not limited to; confiscation of personal property such as medications, legal materials and religious material, allowing staff to strip search Plaintiff without cause and allowing staff to use unnecessary force against Plaintiff, interference with mail, both incoming and outgoing, and failure to provide (or allow for purchase) Plaintiff with legal envelopes, allowing and instigating false disciplinary charges to be brought against Plaintiff, threatening Plaintiff with punishment for refusal to become an informant, and an unfair disciplinary process without due process of law. This list is meant to be illustrative of the types of claims contained in the Complaint and not exhaustive. The above listed allegations can be generally grouped into five specific claims: Fourteenth Amendment due process claim, Eighth Amendment deliberate indifference claim, First Amendment and access to courts claim; Fourth Amendment unlawful search and seizure claim and retaliation

claim.

This Court has spent considerable time trying to decipher what claims Plaintiff has alleged against whom in his Complaint which is 261 pages in length and names 29 defendants. After reviewing the voluminous Complaint, the Court directs Defendants McCurry, John Doe #1, Doctor Uhren, Nurse Capeluppo, Nurse McClellen and Nurse Hensen to file an Answer detailing all of Plaintiff's allegations and responding to each. The remaining defendants are dismissed.

## I. ANALYSIS

The Court notes that much of Plaintiff's narrative Complaint deals with complaints about the daily operations of the Mountain View Correctional Facility. One such example is Plaintiff's concern that rejection notices from the mail room, inventory forms for personal property and other such forms are not filled out completely. While constitutional rights must be scrupulously observed by prison officials, inquiry of federal courts into prison management is limited under 42 U.S.C. § 1983 to whether a particular system violates any constitutional provisions. Outside of this inquiry, prison administrators must be permitted to exercise wide discretion. Lewis v. Casey, 518 U.S. 343, 363 (1996).

A. **Supervisory Liability**

Defendants Boyd Bennett, Director of Prisons, and David Mitchell, Superintendent of Mountain View Correctional, are named in Plaintiff's Complaint however had no personal contact with Plaintiff with respect to any allegations in his Complaint. The Court assumes that they have been named in their supervisory capacity. However, as an initial matter, the Court notes that the doctrine of respondeat superior is generally inapplicable to § 1983 suits. Monell v. Department of

Social Services, 436 U.S. 658, 694 (1978). Additionally there are no allegations that any of these Defendants instituted any official policy that any other Defendant was following which caused Plaintiff's alleged constitutional deprivations. Therefore, there is no basis upon which to attach supervisory liability to Mr. Bennett and Mr. Mitchell. Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982) The claims against Defendants Bennett and Mitchell are therefore dismissed.

B. **First Amendment and Access to Court Claim**

Reasonable access by prisoners to both state and federal courts and to communication with attorneys is a guaranteed right. Ex Parte Hull, 312 U.S. 546, 549 (1941). However, a prisoner must show an actual injury in connection with an access to court claim. In order to establish actual injury, a prisoner must show that his efforts to pursue a legal claim were hindered. Lewis v. Casey, 518 U.S. 343, 351-52 (1996). Here, Plaintiff has complained about many things in connection with his access to courts claim, however he has not alleged any specific injury i.e. that his efforts to pursue a specific legal claim was hindered. Therefore, Plaintiff has failed to state a claim for relief with respect to his access to court claim and that claim will be dismissed.

Plaintiff alleges that prison staff have confiscated personal items during searches of his cell including many books and claims that the taking of such items is a violation of his First Amendment rights. However, as stated below, prisoners have no expectation of privacy in their cells or in their possessions and the searches that resulted in the confiscation of Plaintiff's personal property do not violated the Fourth Amendment. These allegations also do not rise to the level of a violation of the First Amendment.

C. **Fourth Amendment Unlawful Search and Seizure Claim and Strip Search Claim**

Prisoners have no legitimate expectation of privacy in their cells or in their possessions, therefore the Fourth Amendment is not applicable to searches of prison cells. Hudson v. Palmer, 468 U.S. 517, 525, 526 (1984). Given that the law is clear with respect to prisoners having no expectation of privacy in their cells, Plaintiff has failed to state a claim for relief regarding unlawful searches of his cell and the seizure of his personal items. Therefore all Fourth Amendment claims except claims related to the strip searches, are dismissed for failure to state a claim for relief.

**Strip Searches**

Plaintiff claims that he was strip searched on October 17, 2003 by John Doe #1 and #2 and made to stand just inside of his cell naked and in view of female staff and other inmates, while his cell was searched. Plaintiff contends that Captain Charles McCurry was on the unit during the strip search of Plaintiff on October 17, 2003 and was aware that Plaintiff was made to remain naked in his cell in full view of other inmates and female staff while Officers John Doe #1 and 2 searched his cell. Plaintiff also contends that he was strip searched again on July 29, 2005 by Officers Adam York and Dennis Silvers and forced to stand in the hall outside his cell in only his underwear while his cell was being searched.

### 1. October 17, 2003

On October 17, 2003 during an institutional shakedown, Officers John Doe #1 (an officer employed at Mountain View Correctional Institution) and John Doe # 2[1] conducted a search of Plaintiff's cell. Plaintiff was made to remove all of this clothing for a strip search. After the strip search, Plaintiff was handcuffed behind his back and made to stand against the wall inside his cell but in front of the door to his cell directly in front of his cell and ordered not to lean against the wall.

---

[1] John Doe #2 is not named as a defendant.

The location that Plaintiff was directed to stand naked was in full view of the staff standing in the day room including female officers and also in view of other inmates.[2] Plaintiff asked if he could stand out of the view of others and was told to "shut up" by Officer John Doe #1. Captain McCurry came into Plaintiff's cell during the search and observed that Plaintiff was handcuffed and naked.

### 2. July 29, 2005

On July 29, 2005 Officers Adam York and Dennis Silvers conducted a search of Plaintiff's cell. During the search of his cell, Plaintiff was strip searched. After Plaintiff's clothing was searched, Plaintiff was given only his underwear to put back on. Plaintiff was made to stand in his underwear in the hallway while his cell was searched.

In Lee v. Downs,[3] the Fourth Circuit Court of Appeals held that prisoners do retain some degree of privacy that can be violated when forced to be exposed to persons of the opposite sex. Lee v. Downs, 641 F2d 1117 (4th Cir. 1982). The Court stated that "[p]ersons in prison must surrender many rights of privacy which most people may claim in their private homes. Much of the life in prison is communal, and many prisoners must be housed in cells with openings through which they may be seen by guards. Most people, however, have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating. When not reasonably necessary, that sort of degradation is not to be visited upon

---

[2] Plaintiff contends that the other inmates subject to search that day were permitted to be clothed in their underwear.

[3] The Constitutionality of the inmate right to privacy established in Lee is unresolved. Some courts have held that the Fourth Amendment's protection against unreasonable searches and seizures is the source of inmate right to privacy. Other courts have found the right rooted in the Eighth Amendment's prohibition against cruel and unusual punishment. While still other courts have suggested that both amendments may form the basis for the right. See Lee, ftnt. 24.

those confined in our prisons." Id. at 1119 The cases analyzed after the Lee opinion suggest that reasonable necessity is intertwined with penalogical interest.  In other words, if a inmate's privacy can be maintained without compromising prison operations, then that privacy should be respected. Hickman v. Jackson, 2005 WL 186245 (E.D.Va.).

Here, during the July 29, 2005 search, Plaintiff contends that he was strip searched and that he was forced to stand in the hallway outside his cell wearing only his underwear while the officers searched his cell.  According to Plaintiff,  the strip search was conducted by male officers and there is no allegation that female officers were present during the search or while he was standing in the hallway wearing only his underwear.  While, this Court assumes this experiences was humiliating, the facts as stated by Plaintiff do not rise to the level of a constitutional violation.

With respect to the search conducted on October 17, 2003,  the Superintendent of Mountain View Correctional Institution, Mr. David Mitchell,  is directed to specifically identify, John Doe #1, the officer who conducted the strip search of Plaintiff on October 17, 2003.  The Superintendent of Mountain View Correctional Institution  shall file his name with this Court no later than fifteen (15) days from the date of this Order.  In the event that such officer is no longer employed by Department of Corrections, such officer's name and address at which he can be served shall be submitted to this Court under seal.  It is further ordered that Defendant Charles McCurry and John Doe #1 file an answer detailing Plaintiff's allegations with respect to this claim.

D. **Eighth Amendment Medical Deliberate Indifference and Privacy Claim**

A prisoner makes out a claim under the Eighth Amendment if he can establish that prison medical staff were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S.

97, 104 (1976). An Eighth Amendment violation occurs only if the medical need is serious. Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). Additionally, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to an inmates health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to him or which would be apparent to a reasonable person in his position. See Miltier, 896 F.2d at 852-53. However, a plaintiff must prove that defendant was aware of facts showing a risk of harm and also drew the inference that a substantial risk of harm existed. See Johnson v. Quinones, 145 F.3d 164, 167-68 (4th Cir. 1998).

Plaintiff contends that in July 2005 his prescription for acyclovir had been discontinued for no reason. After complaining and asking for sick call requests, Plaintiff was seen by Dr. Ubren. Dr. Ubren told Plaintiff that he could find no record in Plaintiff's medical file indicating a need for Acyclovir. Plaintiff claims he has been on the medicine for years due to being diagnosed with herpes. Dr. Ubren examined Plaintiff and noted that Plaintiff did have herpes type lesions but that he needed to administer a test which he did not have in stock. The test was to confirm that what he suspected was herpes was, in fact, herpes. After complaining several times, Plaintiff was finally informed the test was in and that he could come to medical to have it administered. On July 17, 2005 Plaintiff noticed the first symptoms of a herpes outbreak and informed medical so that he could have a test administered. Nurse McClellen came to Plaintiff's cell and told Plaintiff that he needed to pop the blisters and run a swab over the lesions so that puss gets on the swab. Plaintiff asked why this was not being done in the medical unit and Nurse McClellen told Plaintiff that he was not a

7

doctor and it was not up to him. Plaintiff attempted to step away from the cell door so that he could administer the test in private, but Nurse McClellan insisted that Plaintiff show her his penis so that she could verify the herpes outbreak and that he performed the test correctly. On July 18, 2005 Nurse Capeluppo came to Plaintiff's cell and advised him in a loud voice that he needed to swab his herpes lesion again.

On August 2, 2005 Plaintiff saw Dr. Uben and was told that the herpes test came back negative and that he would not prescribe any medication. Plaintiff told the doctor he was in pain and asked if there was another test. Dr. Uben told Plaintiff there was but that the State would not pay for it. Dr. Ubren the reluctantly agreed to do the previous test again stating "maybe it will work this time." The doctor told Plaintiff to fill out a sick call slip when he had another outbreak and that he would leave instructions that Plaintiff should be brought to medical to have the test administered privately when the outbreak was fresh. On August 15, 2005 Plaintiff experienced a herpes outbreak. Plaintiff immediately filled out a sick call form asking that the test be administered as soon as possible. On August 19, 2005 Plaintiff was taken to the medical station and a nurse administered the herpes test in front of two officers from custody.

The Court directs Defendants Doctor Uhren, Nurse Capeluppo and Nurse McClellen to file an answer detailing Plaintiff's claim regarding his treatment of herpes.[4] The answer of these Defendants shall include an analysis of deliberate indifference regarding his treatment of herpes and a privacy analysis regarding the herpes testing conducted at Plaintiff's cell and in the presence of custody officers. The remaining deliberate indifference claims are dismissed for failure to state a

---

[4] Plaintiff contends that Dr. Uhren, Nurse Capeluppo and Nurse McClellen violated his eighth and fourteenth amendment right to equal protection by willfully disclosing confidential medical information in the presence of prisoners and non-medical staff.

claim for relief.

E. **Eighth Amendment Excessive Force Claim**

Plaintiff claims that Officers John Doe # 1 and Adam York used excessive force against him in connection with searches of his cell on October 17, 2003 and July 29, 2005 respectively (see section C above). However, in addition to establishing that the officers used force maliciously and sadistically for the purpose of causing harm, which Plaintiff has not established, an excessive force claim also requires that Plaintiff establish some injury associated with the excessive force. See Whitley v. Albers, 475 U.S. 312, 320 (1986); Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994). Plaintiff has not alleged any injury as a result of his excessive force claims, therefore these claims must be dismissed.

F. **Fourteenth Amendment Due Process Rights**

Plaintiff contends throughout his Complaint that the disciplinary process at Mountain View as applied to him is unfair and is administered without due process. The Court notes that notwithstanding Plaintiff's claim that the disciplinary process is unfair and administered without respect to due process, Plaintiff has successfully challenged and overturned several disciplinary charges and therefore the Court will not consider Plaintiff's claims with respect to disciplinary charges that Plaintiff successfully had dismissed as he can show no harm as a result of any alleged procedural due process violations.

1. **Officer Avery, Disciplinary Hearing Officer**

Plaintiff claims on September 14, 2004 that he received notice that he was accused of violating the inmate conduct rules including that he made defamatory statements in his outgoing

mail. Plaintiff concedes that he was given notice of his rights, that he was permitted to make a written statement, and that he was given a chance to explain his version of the events to the acting facility head and to the internal affairs officer. However, Plaintiff contends that when he was brought before Disciplinary Hearing Officer ("DHO") Avery, Officer Avery refused to read through the witness

statements and the evidence or to allow Plaintiff to refute the charges and explain the evidence. Plaintiff further contends that Officer Avery did allow Plaintiff to submit copies of relevant case law but then ignored the case law in his ruling. Officer Avery then found Plaintiff guilty and sentenced him to twenty (20) days segregation.

The Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974) held that when a liberty interest is at issue, certain procedural safeguards must be followed. The Supreme Court has gone on to state however, that not all punishment that a prisoner may receive is subject to the procedural safeguards of Wolff. Instead, a prisoner must establish that his punishment is "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin v. Conner, 515 U.S. 472 (1995). The Court admitted that "prisoners do not shed all constitutional rights at the prison gate," Wolff, 418 U.S. at 555, but stated that "'lawful incarceration brings about the necessary withdrawal or limitations of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Jones, 433 U.S. at 125, quoting Price v. Johnston, 334 U.S. 266 (1948). The Court concluded that "[d]iscipline by prison officials in response to wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin v. Conner, 515 U.S. 472, 485 (1995) (holding that segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty

interest).

Here, Plaintiff contends that his disciplinary hearing was not conducted fairly and as such it violated his Fourteenth Amendment right to due process. However, as stated in the cases above, not every disciplinary hearing must comport with the procedural safeguards outlined in Wolff. Plaintiff has not articulated a protected liberty interest that would entitle him to the procedural protections set forth in Wolff nor has he articulated why his twenty (20) days in segregation amounts to "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin v. Conner, 515 U.S. 472 (1995). Defendant Avery is dismissed.

2. **Ms. Pimpons, Chief Disciplinary Officer**

Plaintiff contends that Ms. Pimpons, Chief Disciplinary Officer, violated his First and Fourteenth Amendment rights by upholding a disciplinary decision against Plaintiff. Plaintiff contends that he was disciplined for using language in his outgoing mail that was constitutionally protected. First, Plaintiff contends that Disciplinary Hearing Officer Avery violated his rights by failing to follow due process procedures during his hearing. The fact that Ms. Pimpons upheld DHO Avery's decision does not make her liable for any alleged due process violation committed by DHO Avery. In fact, as stated above, Plaintiff has not stated a cause of action against Defendant Avery. Furthermore, the fact that Plaintiff contends the language he used in his outgoing mail was constitutionally protected, does not make Ms. Pimpons's decision to uphold DHO Avery's decision violative of the First Amendment. For these reason, Ms. Pimpons is dismissed.

G. **Retaliation Claims**

Throughout his Complaint, Plaintiff alleges that Captain Charles McCurry retaliated against him presumably for the various grievances he filed. Plaintiff alleges that mail room Officer Donna

Harmon retaliated against him by rejecting several of his magazines and books and negligently delivering his mail to other inmates. Plaintiff believes the mail room negligence described was due to him complaining to the mail room staff about mailroom negligence.

Claims of retaliation are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (1994). Claims of retaliation are legally frivolous unless the claim implicates some right that exists under the Constitution. A plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right. When a claim of retaliation fails to implicate any constitutional right, it is properly subject to dismissal. Adams at 75.

Plaintiff claims that Officer Donna Harmon, who runs the mailroom, retaliated against him because he complained to the staff about mail room negligence. In general, complaining is not the equivalent of exercising a constitutionally protected right. Furthermore, negligence in delivering the mail is not a violation of the Constitution. The allegations against Officer Harmon are too conclusory to satisfy the high standards for a retaliation claims. Due to the conclusory nature of Plaintiff's claim against Ms. Harmon taken together with the skepticism with which Court are directed to view allegations of retaliation, this Court will dismiss the retaliation claim against Ms. Harmon and will dismiss Officer Harmon from this case.

With respect to Captain McCurry, Plaintiff alleges that after he wrote a grievance on October 27, 2003 requesting the return of his property which had been confiscated from him during the shakedown on October 17, 2003, Captain McCurry began his retaliatory campaign against him which

included a November 4, 2003 write up for covering the vents in his cell,[5] a write up for sending stamps through the mail; several write ups for possessing more than eighty stamps, a write up for attempt to misuse the mail;[6] a June 3, 2004 write up for willingly disobeying a direct order and misuse of the mail;[7] and a September 13, 2004 write up alleging that Plaintiff made defamatory statements in his outgoing mail.[8] Plaintiff also alleges that as part of Captain McCurry's retaliation, he prevented Plaintiff from receiving legal envelopes and instructed staff not to give him or sell to him legal envelopes.

Defendant McCurry is directed to file an Answer detailing Plaintiff's allegations of retaliation and responding to each.

## II. ORDER

Given the length of Plaintiff's Complaint and that the Court expects a complete answer detailing all of Plaintiff's allegations, the court directs Defendants McCurry, John Doe #1, Doctor Uhren, Nurse Capeluppo and Nurse McClellen to file an answer forty-five (45) days from the date of this Order. Moreover, if at the time of the filing of the Answer, Defendants are prepared to file a dispositive motion, the Court would accept such a filing simultaneously with the Answer.

---

[5] This charge was dropped by Captain McCurry due to the fact that Plaintiff had never been given a previous order not to cover the vent in his cell.

[6] These charges were dropped after four investigations.

[7] This disciplinary charge which was brought against Plaintiff by Captain McCurry was dismissed the very next day on June 4, 2004 at the request of Captain McCurry and Mr. Lancaster, the Assistant Superintendent.

[8] Although Plaintiff vehemently denies this allegation, he was ultimately found guilty and served twenty days in segregation.

13

**NOW, THEREFORE, IT IS HEREBY ORDERED that**

1. Defendant McCurry, John Doe #1, Doctor Uhren, Nurse Capeluppo and Nurse McClellen shall file an Answer and/or a dispositive motion to Plaintiff's Complaint forty-five days (45) from the date of this Order or in accordance with the Federal Rules of Civil Procedure. Such answer shall detail all of Plaintiff's allegations and respond to each;

2. All remaining defendants are dismissed;

3. **Superintendent David Mitchell shall file a document with this Court fifteen (15) days from the date of this Order naming the officer who conducted the strip search of Plaintiff on October 17, 2003. Superintendent Mitchell is directed to paragraphs 18-31 of Plaintiff's Complaint to help determine the identity of John Doe # 1. To the extent that such officer is no longer employed by the Department of Corrections, Superintendent Mitchell shall file the officers name and address at which he may be served under seal with this Court**.

4. The Clerk shall issue summons and deliver it forthwith to the U.S. Marshall who will make service of process without additional cost.

5. **The Clerk shall serve David Mitchell, Superintendent of Mountain View Correctional Facility, with a copy of this Order.**

SO ORDERED.

> Signed: January 12, 2007
>
> *Graham C. Mullen*
> Graham C. Mullen
> United States District Judge

cc: **David Mitchell, Superintendent of Mountain View Correctional Facility**